UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| HYRUM JOSEPH WEST, | Case No. 2:13-cv-00271-APG-VCF |
| Plaintiff, | |
| vs. | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| NYE COUNTY et al., | |
| Defendants. | (Dkt. #37) |

Pro se plaintiff Hyrum West was incarcerated at Nye County Detention Center ("NCDC"). West alleges that NCDC violated his constitutional rights by being deliberately indifferent to his medical needs and confinement conditions.

Defendants have moved for summary judgment on a variety of bases. I agree with defendants that West does not provide any evidence creating a triable fact about whether NCDC was deliberately indifferent towards him.[1] Therefore, I grant summary judgment in favor of defendants.

## I.  LEGAL STANDARDS

### A.  Summary Judgment

Summary judgment is appropriate when the pleadings, discovery responses, and other offered evidence show "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[2] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the non-moving party.[3]

---

[1] (Dkt. #37.)

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[3] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

1

If the moving party demonstrates the absence of any genuine issue of material fact, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."[4] The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[5] She "must produce specific evidence, through affidavits or admissible discovery material, to show" a sufficient evidentiary basis on which a reasonable fact finder could find in her favor.[6]

Even though a *pro se* litigant's complaint is held "to less stringent standards than formal pleadings drafted by lawyers,"[7] it nevertheless must comply with the applicable rules.[8]

**B.  Claims under 42 U.S.C. § 1983**

42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Section 1983 provides a mechanism for the private enforcement of substantive rights conferred by the Constitution of the United States and federal statutes.[9] Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for

---

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[5] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citation omitted).

[6] *Bhan v. NME Hosps. Inc.*, 929 F.2d 1404, 1409 (9th Cir. 191); *Anderson*, 477 U.S. at 248-49.

[7] *Hanines v. Kerner*, 404 U.S. 519, 520 (1972).

[8] *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1986).

[9] *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

vindicating federal rights elsewhere conferred.'"[10] "To state a claim under §1983, a plaintiff must (1) allege the violation of a right secured by the Constitution and laws of the United States, and must (2) show that the alleged deprivation was committed by a person acting under color of state law."[11]

Municipalities are not "vicariously liable for the deprivation of constitutional rights by employees."[12] To be liable, the municipality itself must deliberately implement a policy or custom which causes a constitutional violation.[13] A municipality may be liable for failing to act only if its failure was intentional, amounting to "deliberate indifference" to an individual's constitutional rights.[14]

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[15] A pattern of violation is "ordinarily necessary" to demonstrate deliberate indifference.[16]

Negligence, including medical malpractice, "does not become a constitutional violation merely because the victim is a prisoner."[17] In fact, even gross negligence is

---

[10] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

[11] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[12] *Flores v. Vnty. Of Los Angeles*, 758 F.3d 1154, 11158 (9th Cir. 2014).

[13] *Id.*

[14] *Id.*

[15] *Connick v. Thompson*, 131 S.Ct. at 1360 (2011).

[16] *Id.*

[17] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

insufficient to establish a constitutional violation.[18]  Finally, a §1983 plaintiff can prevail only by demonstrating that the alleged policy is so "closely related to the ultimate injury" as to constitute the "moving force behind" it.[19]

## II.    DISCUSSION

West raises three claims of deliberate indifference.  He argues that the NCDC was deliberately indifferent towards (A) the deplorable conditions of his confinement, (B)  his medical needs, and (C) his mental health needs.  I address each of these claims in turn.

### A.  Conditions of Confinement

West first asserts NCDC was deliberately indifferent to his confinement conditions because: (1) it allowed excessive rust, mold, vermin, asbestos, and black residues and particles in the dormitory and cell pods, (2) it did not control pounding, shaking, and dust that was created by NCDC's construction of a new prison facility, (3) it never cleaned the air ventilation systems, and (4) it failed to screen and contain inmates with diseases.[20]

NCDC submitted admissible evidence showing that it was not deliberately indifferent to West's confinement conditions.  First, and most importantly, the evidence indicates that NCDC was not aware of the confinement conditions West alleges.[21]  Additionally, NCDC provides that its Detention Services Policy Manual provides specific guidelines that establish an infectious

---

[18] *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981); *I.W. v. Grubbs*, 92 F.3d 894,897 (9th Cir. 1996).

[19] *Wayman v. Cnty. of Los Angeles*, 23 F. App'x 770, 773 (9th Cir. 2001) (citations omitted).

[20] (Dkt. #7 at 5–6.)

[21] (Dkt. #37 at 18.)

4

disease-free confinement.[22] For example, the screening process that West was subjected to prior to his incarceration is performed on all incoming inmates.[23]

In contrast, West failed to provide any evidence to create a triable issue about his claims related to confinement conditions. West offers no evidence indicating that NCDC was aware of the alleged conditions[24] or the disturbances that the construction activities caused. Nor does he offer any evidence to demonstrate that NCDC was deliberately indifferent in screening or contaminating inmates with diseases. In fact, West's own complaint states that inmates cleaned the ventilation system.[25] In short, West does not provide any evidence to demonstrate that the level of care provided by NCDC was constitutionally inadequate.

**B. Medical Needs**

West next alleges that NCDC was deliberately indifferent to his medical needs because (1) its officers conspired to deny West access to a doctor and (2) it transferred him to another facility before he could see a surgeon.[26]

NCDC provided admissible evidence demonstrating that while NCDC denied West's request for prostate cancer screening,[27] it arranged a teleconference appointment for West with Dr. Toppo.[28] When Dr. Toppo offered his opinion on West's condition, West immediately requested further medical assistance to clarify his condition.[29] NCDC then arranged for a face-

---

[22] (Dkt. #37 at 19.)

[23] (*Id.*)

[24] West does not offer any evidence such as a complaint or report that informed NCDC about the condition of the dormitories and cell pods.

[25] (Dkt. #7 at 6.)

[26] (Dkt. #7 at 11.)

[27] West's request for prostate cancer screening was denied because Nye County Health and Human Services (NCHHS) deemed the screening unnecessary.

[28] (Dkt. #37 at 21–29.)

[29] (Dkt. # 37 at 25.) Dr. Toppo offered a different opinion from the initial diagnosis conducted by a different doctor. West submitted a request to clarify the discrepancy. That

to-face meeting for him with Dr. Toppo, during which the doctor ordered West to see a surgeon for his hernia.[30]

NCDC transferred West about one month after Dr. Toppo ordered him to see a surgeon. West offers no evidence to indicate that NCDC transferred him for improper reasons. West may believe he should have been given different medical care, but he has not submitted any admissible evidence creating a triable issue that NCDC was deliberately indifferent to his medical needs. NCDC provided him with regular access to doctors and responded to each of his requests to see a medical provider.

**C. Mental Health Needs**

In his argument that NCDC was deliberately indifferent to his mental health needs, West focuses, like he does with most of his arguments, on the conditions of the NCDC building. In particular, he argues that "by continuing to use a county jail that has asbestos insulations, . . . [NCDC] shows deliberate indifference because Nye County was responsible to build a new county jail many years sooner."[31]

But West does not present any evidence connecting the alleged asbestos insulations to a particular mental health condition they may have triggered or exacerbated. Nor does he rebut the evidence NCDC has provided of the "suitable mental health care"[32] it claims to have given him. For example, NCDC provides evidence that it "ensured West continued the medication that was prescribed for his depression and anxiety"[33] and that it frequently helped West visit NCDC's

---

request was cancelled twice. The first cancellation was due to NCDC's lack of staff. The second appointment was cancelled by Nye Regional Medical Center (NRMC). NCDC eventually rescheduled the appointment with NRMC, and West was treated by a doctor for unrelated condition. About a month later, Dr. Toppo saw West personally at NCDC.

[30] (Dkt. #37 at 24.)

[31] (Dkt. #45 at 26.)

[32] (Dkt. #37 at 26)

[33] (*Id.* at 27.)

mental health professional.[34]  Accordingly, West has not created a triable issue that NCDC was deliberately indifferent to his mental health needs.

## III. CONCLUSION

IT IS HEREBY ORDERED that Defendant Nye County Detention Center's Motion for Summary Judgment **(Dkt. #37) is GRANTED**.  The clerk shall enter judgment accordingly.

DATED this 25th day of August, 2015.

**ANDREW P. GORDON**
**UNITED STATES DISTRICT JUDGE**

---

[34] (*Id.*)